IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HRP CREATIVE SERVICES CO., LLC,<br><br>Plaintiff,<br><br>v.<br><br>FPI-MB ENTERTAINMENT, LLC,<br><br>Defendant. | Civil Action No. 09-290-SD |

## DECLARATION OF STEVEN GOODWIN

STEVEN GOODWIN, declares under penalty of perjury that the following is true and correct:

1. I am a member and managing director of plaintiff HRP Creative Services Co., LLC ("HRP Creative Services"). I submit this Declaration in support of HRP Creative Services' opposition to the motion for transfer of venue brought by defendant FPI-MB Entertainment, LLC ("FPI-MB" or "Defendant").

### BACKGROUND

2. I was the Chief Executive Officer and Chief Financial Officer of HRP Myrtle Beach Operations, LLC ("HRP Myrtle") until November 2008.

3. On September 24, 2008, the former owners of the theme park formerly known as Hard Rock Park (the "Park"), HRP Myrtle Beach Holdings, LLC, HRP Myrtle Beach Holdings Capital Corp, HRP Myrtle Beach, HRP Myrtle Beach Capital Corp., HRP Myrtle Beach Management, LLC, HRP Global Management LLC and We Got Your Back Security Co., LLC (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the

United States Code in the United States Bankruptcy Court in the District of Delaware (the "Delaware Bankruptcy Court").

4. On February 10, 2009, the bankruptcy trustee filed a Motion for Entry of an Order (I) Authorizing Sale of Hard Rock Park Free and Clear of All Liens, Claims and Encumbrances and Other Interest and (II) Establishing Procedures for the Assumption of and Assignment of Certain Designated Contracts and Unexpired Leases (the "Sale Motion"). Annexed as Exhibit "A" to the Sale Motion is the Asset Purchase Agreement by and between FPI-MB, as Purchaser, and Alfred Giuliano, as Chapter 7 Trustee on behalf of the Bankruptcy Estate of HRP Myrtle, dated February 9, 2009 (the "APA").

5. By order dated February 18, 2009, the Delaware Bankruptcy Court approved the sale (the "Asset Sale") proposed by the Sale Motion and APA (the "Sale Order").

6. On March 20, 2009, FPI-MB moved before the Delaware Bankruptcy Court to enforce the Sale Order (the "Motion to Enforce Sales Order"), asserting that the Asset Sale included HRP Creative Services' intellectual property.

7. In the course of litigation of this Motion to Enforce Sales Order, most of the key material documents relevant to the instant action were transported to Delaware and presented to the Delaware Bankruptcy Court.

8. FPI-MB requested an expedited hearing on its Motion to Enforce Sales Order, asserting that "as the planned opening date of the Park is fast approaching…the need to resolve the issues concerning [HRP] Creative Services'…intellectual property are becoming particularly acute". On March 27, 2009, Judge Carey held a hearing on FPI-MB's motion in the Delaware Bankruptcy Court. I attended this hearing. While there I observed a key executive from FPI-MB also in attendance. FPI-MB's attorney was flown in from Texas for the hearing.

9.  On March 30, 2009, Judge Carey denied Defendant's motion in its entirety, finding that HRP Creative Services owns the Creative Content (as defined in the Creative Services Agreement entered into by HRP Creative Services and HRP Myrtle), and that the same was never transferred to FPI-MB. A true and correct copy of Judge Carey's March 30, 2009 decision is attached hereto as **Exhibit A**.

10. Plaintiff filed the Complaint in the United States District Court for the District of Delaware on April 24, 2009, alleging various counts of trademark infringement and unfair competition against Defendant for its use of Plaintiff's intellectual property, ownership of which was confirmed by Judge Carey's ruling. A true and correct copy of the Complaint is attached hereto as **Exhibit B**.

11. On May 1, 2009, Plaintiff subsequently filed its Motion for Preliminary Injunction before the District Court in Delaware to enjoin Defendant from use of the intellectual property.

12. On May 13, 2009, Defendant filed its Answer to the Complaint and an accompanying Motion for Transfer of Venue.

## HRP CREATIVE SERVICES

13. HRP Creative Services is a Florida limited liability company with two principals – Jon Binkowski and myself. I am currently a resident of New York. Mr. Binkowski resides in Florida.

14. As held by Judge Carey's March 30, 2009 Order, HRP Creative Services' owns the intellectual property, trademarks and trade dress which constitutes the principle design elements of the Park. Such intellectual property, trademarks and trade dress are the company's sole assets.

15. HRP Creative Services is currently in the planning stages to license certain intellectual property outside of the theme park industry, developing themed restaurants, themed attractions, themed play areas and themed merchandise stores around HRP Creative Services' Creative Content.

16. Mr. Binkowski has also been in discussions with Universal Studios regarding development of a version of a country ice-skating show featured at the Park called "Country on the Rocks." This show could be produced in a number of locations around the United States.

## THE HARD ROCK PARK

17. In approximately late 2001, my colleague Jon Binkowski approached me about the idea of building a Hard Rock Hotel next to a theme park Mr. Binkowski had been developing. By the summer of 2002, our discussions led to Mr. Binkowski's creation of a theme park infused with a music theme.

18. Mr. Binkowski and I approached Hard Rock Café International (USA) Inc. ("Hard Rock") with the idea, and Hard Rock voiced interest. Accordingly, from approximately late 2002 through 2006, Mr. Binkowski and I fleshed-out our design for a music theme park into the highly stylized and distinctive Hard Rock Park (the "Park") which featured themed restaurants, themed attractions, themed play areas, themed merchandise stores and themed zones, each with a unique and highly stylized physical foundation and entertainment experience that includes intellectual property, trademarks and trade dress which encompassed the design of the Park as a whole and the various elements of the Park.

19. The Park was constructed in Myrtle Beach, South Carolina due to the city's strategic location as the South's premier vacation mecca drawing visitors from all over the United States and abroad. The majority of travelers to the city come from New York, New

Jersey, Pennsylvania and Ohio. The city is also a particular attraction to Spring Break travelers from across the nation. A true and correct copy of the relevant portions of a report produced by the Myrtle Beach, South Carolina Chamber of Commerce, entitled "Statistical Abstract for the Myrtle Beach Area of South Carolina," are attached hereto as **Exhibit C**.

20. The national and international nature of the tourist industry in Myrtle Beach, South Carolina necessitates a broad marketing and promotional scheme.

21. I have observed that FPI-MB understands and is acting on this necessity, marketing itself to visitors across the nation and around the world. FPI-MB has maintained ticket information on its website. FPI-MB has also issued national press releases touting its plans to develop its thinly "rebranded" Freestyle Music Park on a global scale. A true and correct copy of selected press releases maintained on the Freestyle Music Park Website are attached hereto as **Exhibit D**. FPI-MB created a comprehensive internet presence by maintaining webpages on the popular social networking sites Facebook and MySpace, and creating content for a Wikipedia webpage. A true and correct copy of selected portions of such internet content is attached hereto as **Exhibit E**. As seen in Exhibit E, the individuals who have signed up for FPI-MB's Facebook page come from all over the nation, not solely from South Carolina. FPI-MB also used video and photography to produce a commercial for the Park on YouTube.

22. FPI-MB is also in negotiations with national hotel chains to create travel packages for the Park that would be sold nation-wide.

## CONCLUSION

23. As neither Mr. Binkowski nor I reside in South Carolina, it would be an onerously inconvenient venue for this litigation. Delaware is more convenient for travel purposes, and all

of the relevant documentary evidence is already located in Delaware due to the previous litigation brought by Defendant. As neither Mr. Binkowski nor I maintain a business presence in South Carolina, none of our business documents are located there, and none of our relevant witnesses reside there, we object to transfer of venue to that location.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of May, 2009.

*/s/ Steven Goodwin*
STEVEN GOODWIN

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Frederick L. Cottrell, III, Esquire
> Anne Shea Gaza, Esquire
> Michelle E. Whalen, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I further certify that I caused copies of the foregoing document to be served on May 18, 2009, upon the following in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Anne Shea Gaza, Esquire<br>Michelle E. Whalen, Esquire<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>Wilmington, DE 19801 | *VIA ELECTRONIC MAIL<br>and HAND DELIVERY* |
| Cherie W. Blackburn, Esquire<br>NEXSEN PRUET, LLC<br>205 King Street<br>Suite 400<br>Charleston, SC 29401 | *VIA ELECTRONIC MAIL* |
| Franklin G. Daniels, Esquire<br>NEXSEN PRUET, LLC<br>1101 Johnson Avenue<br>Suite 300<br>Myrtle Beach, SC 29577 | *VIA ELECTRONIC MAIL* |

/s/ Maryellen Noreika
Maryellen Noreika (#3208)